UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DUSTY C. TROSHAK, JR.,          :
                                :
        Plaintiff               :       No. 4:11-CV-00872
                                :
     vs.                        :       (Complaint Filed 5/6/11)
                                :
MICHAEL ASTRUE,                 :
COMMISSIONER OF SOCIAL          :       (Judge Munley)
SECURITY,                       :
                                :
        Defendant               :

## MEMORANDUM

## Background

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Dusty C. Troshak, Jr.'s claim for social security disability insurance benefits.

Troshak protectively filed his application for disability insurance benefits on September 26, 2008. Tr. 15, 51 and 110-111.[1]  The application was initially denied by the Bureau of Disability Determination on February 10, 2009.[2] Tr. 52-55.  On March 18, 2009, Troshak requested a hearing before an administrative law judge. Tr. 59-60.  A hearing was held before an administrative law judge on July 29, 2009, and the

_____

1. References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of his Answer on July 18, 2011.

2. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.  Tr. 52.

administrative law judge issued a decision denying Troshak's application for disability benefits on August 6, 2009. Tr. 15-48. On August 10, 2009, Troshak filed a request for review with the Appeals Council. Tr. 6-7. After 19 months had elapsed, the Appeals Council concluded that there was no basis upon which to grant Troshak's request for review. Tr. 1-4. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Troshak then filed a complaint in this court on May 6, 2011. Supporting and opposing briefs and statements of material facts were submitted and the appeal[3] became ripe for disposition on November 23, 2011, when Troshak filed a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Troshak meets the insured status requirements of the Social Security Act through December 31, 2012. Tr. 15, 17 and 128.

Troshak, who was born in the United States on August 5, 1971, graduated from high school and can read, write, speak and understand the English language and perform basic mathematical

---

3. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

functions. Tr. 25, 51, 110, 122, 134, 142, 150 and 162. During his elementary and secondary schooling, Troshak attended regular education classes. Tr. 150.

Troshak although relatively young[4] has a lengthy history of work and earnings and held two jobs which can be considered past relevant employment.[5]  A vocational expert testified that Troshak's past relevant employment consisted of semi-skilled, medium work as a "buffer" and skilled, light work[6]

_____

4. At the time of the administrative hearing Troshak was 37 years of age and considered a "younger individual" whose age would not seriously impact his ability to adjust to other work. Tr. 25; 20 C.F.R. §§ 404.1563(c) and 416.963(c).  The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49."  20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

5. Past relevant employment in the present case means work performed by Troshak during the 15 years prior to the date his claim for disability benefits was adjudicated by the Commissioner.  20 C.F.R. §§ 404.1560 and 404.1565.

6. The terms sedentary, light, medium, heavy and very heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light work.*  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of

as an "automotive service manager." Tr. 43.

The "buffer" position was described in documents filed
with the Social Security Administration as a "buffer polisher."
Tr.144. Troshak worked for eight years at a Harley-Davidson plant
in York, Pennsylvania, polishing metal to be chrome plated. Tr.
27-28, 153 and 172. The "automotive service manager" position was
described in the same document as a "reconditioning manager"  at
a "used car lot." Id.  Troshak worked in that capacity from
August of 1991 to January of 2000. Id.

Records of the Social Security Administration reveal
that Troshak had earnings as follows:

| | |
|---|---|
| 1987 | $  839.00 |
| 1988 | 4810.83 |
| 1989 | 3265.76 |
| 1990 | 9840.95 |
| 1991 | 14361.95 |
| 1992 | 22815.00 |
| 1993 | 26207.50 |
| 1994 | 28705.00 |

---

walking or standing, or when it involves sitting most
of the time with some pushing and pulling of arm or leg
controls.  To be considered capable of performing a
full or wide range of light work, you must have the
ability to do substantially all of these activities.
If someone can do light work, we determine that he or
she can also do sedentary work, unless there are
additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time.

(c) *Medium work*.  Medium work involves lifting no more
than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds.  If
someone can do medium work, we determine that he or she
can do sedentary and light work.

20 C.F.R. § 404.1567.

4

| | |
|---|---|
| 1995 | 30480.50 |
| 1996 | 35625.75 |
| 1997 | 34937.50 |
| 1998 | 35269.41 |
| 1999 | 37838.32 |
| 2000 | 31281.45 |
| 2001 | 59744.62 |
| 2002 | 62889.28 |
| 2003 | 47422.67 |
| 2004 | 59724.97 |
| 2005 | 72067.90 |
| 2006 | 76685.59 |
| 2007 | 60217.80 |
| 2008 | 7790.07 |

Tr. 123. Troshak's total earnings from 1987 through 2008 were $762,821.82. Id.

Troshak claims that he became disabled on February 1, 2008, as a result of exposure to hydrochloric acid (muriatic acid) mist while working at the Harley-Davidson plant on August 18, 2007. Tr. 28-30, 110, 143, 183 and 319. Troshak claims he suffered an injury to his lungs as the result of inhaling the hydrochloric acid mist. Id. In a document filed with the Social Security Administration Troshak stated that he suffers from a

> [c]hronic cough that is triggered by scents, activity and talking would make working impossible in a factory setting there would be fumes that trigger my cough, and in an office setting there would be perfume and most office type jobs require talking which I am unable to do because I will cough to the point of being unable to catch my breath and feeling as if I am going to pass out. When I lift a substantial weight it also triggers my cough. I suffer from back, neck and chest pain due to the chronic coughing, my voice has changed and my throat is often sore. I am extremely sensitive to scents and changes in temperature and humidity. I suffer from depression and anxiety due to my inability to do things I used to do but do not know if it would affect my ability to work.

Id. Troshak claims that he also suffers from fatigue, acid

5

reflux from the coughing, depression for which he takes an antidepressant medication, sleep apnea and problems sleeping. Tr. 34, 36-37, 132 and 139. Although Troshak attempted to go back to work in March 2009 that attempt was unsuccessful because of his respiratory conditions and he has not engaged in any substantial gainful activity since February 1, 2008. Tr. 17, 26, 304-302 and 319-320. Troshak takes several medications, including Nexium,[7] Wellbutrin,[8] Carafate,[9] Singulair, Nasonex and Albuterol.[10] Tr. 34 and 313. As the result of the injury to his lungs, Troshak was awarded worker's compensation benefits in the amount $623.20 per week. Tr. 29.

For the reasons set forth below we will remand the case to the Commissioner for further proceedings.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the

---

7. Nexium is used to treat gastroesophageal reflux disease.

8. Wellbutrin is an antidepressant.

9. Carafate is used to treat intestinal ulcers.

10. Singulair, Nasonex and Albuterol are all used to treat respiratory conditions.

6

Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." <u>Id.</u>; <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988); <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); <u>Keefe v. Shalala</u>, 71 F.3d 1060, 1062 (2d Cir. 1995); <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988)(quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>Johnson v. Commissioner of Social Security</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. <u>Brown</u>, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the

7

weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo v. Federal Maritime Commission</u>, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," <u>Cotter</u>, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. N.L.R.B.</u>, 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason</u>, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Johnson</u>, 529 F.3d at 203; <u>Cotter</u>, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981); <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

Furthermore,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in which
> he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for
> work.  For purposes of the preceding sentence (with
> respect to any individual), "work which exists in the
> national economy" means work which exists in
> significant numbers either in the region where such
> individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating claims for disability insurance benefits.  See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[11] (2) has an impairment that is severe or a combination of impairments that is severe,[12] (3) has an impairment or combination of

---

11. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

12.  The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 404.1523 and 404.1545(a)(2).

impairments that meets or equals the requirements of a listed impairment,[13] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.  As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[14]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is

---

13. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

14. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

still able to do despite the limitations caused by his or her impairment(s)."").

**MEDICAL RECORDS**

Before we address the administrative law judge's decision and the arguments of counsel, we will review some of Troshak's medical records.

On March 12, 2008, Troshak was examined by Rebecca Bascom, M.D., a professor of pulmonary, allergy and critical care medicine, at the Milton S. Hershey Medical Center College of Medicine, Hershey, Pennsylvania. Tr. 253-254. This was a follow-up appointment with Dr. Bascom who was the primary physician treating Troshak's respiratory condition. Id. After conducting diagnostic pulmonary function tests and performing a physical examination, Dr. Bascom's diagnosis was as follows: (1) inhalation injury, (2) upper airway, a variable extrathoracic airflow obstruction, improving but still significant, (3) recurrent symptomatic sleep apnea as a result of the inhalation injury, and (4) irritability and depressive symptoms associated with this recent illness. Id.

On April 28, 2008, Dr. Bascom issued a "To whom it may concern" letter in which she stated that Troshak "remains medically unable to work in any capacity." Tr. 260.

On June 4, 2008, Dr. Bascom after performing a physical examination concluded that Troshak suffered from several medical conditions, including an inhalation injury, gastroesophageal reflux disease, and depression. Tr. 392-393. In the report of

11

this appointment, Dr. Bascom also stated that she wrote the
following note to Barbara Grigg, a registered nurse, at Harley-
Davidson: "I evaluated Mr. Troshak and reviewed his work
requirements . . . Mr. Troshak continues to be medically unable
to work at his job as the result of inhalation injury that
occurred 8/18/07." Tr. 393.  Dr. Bascom further noted that she
would "reevaluate [Troshak's] status in 2 months." Id.

      Dr. Bascom examined Troshak on August 8, 2008, after
which she issued a work slip stating that Troshak was "medically
unable to work as he has been treated for the sequelae of an
August 2007 inhalation injury." Tr. 244.

      After examining Troshak on September 17, 2008, Dr.
Bascom reported that Troshak was "medically unable to work at any
capacity for the next 2 months, and I will reassess the status
and recommendation at that time." Tr. 236.

      There is also in the record a handwritten note by Dr.
Bascom issued sometime prior to December 22, 2008,[15] which states
in toto as follows: "Mr. Troshak was evaluated by me for
continuing sequelae of his muriatic acid (hydrogen chloride) mist
injury on 8/18/07. He continues to be medically unable to work in
any capacity and will have a surgical procedure December 22,
2008.[16] I will continue to adjust his medications and reassess

_____

15. The date of the note is obscured by an Exhibit number stamp.

16. It appears that Troshak had a problem with his right ear
because a report of an examination of Troshak by Soha N.
Ghossaini, M.D., at the Hershey Medical Center on November 5,

12

his fitness for duty in the third week in January." Tr. 282 (emphasis added).

On February 5, 2009, Henry Weeks, Ph.D., a state agency psychologist, reviewed Troshak's medical records and concluded that he suffered from Depressive Disorder, Not Otherwise Specified, but that it was a non-severe impairment and did not meet the criteria of a listed impairment. Tr. 286, 289 and 296.

On April 27, 2009, Troshak had an appointment with Dr. Bascom after Troshak had unsuccessfully attempted to go back to work on a part-time basis.[17] Tr. 304-302.  In the report of that appointment Dr. Bascom stated that Troshak "is medically unable to work." Tr. 302.

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Troshak has not engaged in substantial gainful work activity since February 28, 2007, the alleged disability onset date. Tr. 17.

At step two of the sequential evaluation process, the administrative law judge found that Troshak has the following

---

2008, states that Troshak had "retraction of the tympanic membrane as well as serous effusion" and that it was recommended that Troshak "undergo myringotomy and tube placement on that side."  Tr. 212. During the appointment on November 5th Troshak complained "of a decreased hearing and fullness in the right ear since the time of his exposure to chemicals in August of 2007." Id.

17. The record reveals that Troshak "returned to work on a trial basis on March 30th, working 5 days, working 2 hours per day."

severe impairment: "chemical insensitivity due to muriatic acid
exposure, chronic cough, moderate ventilation impairment, morbid
obesity and [gastroesophageal reflux disease]." Id.  The
administrative law judge did not address whether or not Troshak
suffered from sleep apnea and depression.

At step three of the sequential evaluation process the
administrative law judge found that Troshak's impairments did not
individually or in combination meet or equal a listed impairment.
Id.

At step four of the sequential evaluation process the
administrative law judge found that Troshak could not perform his
prior relevant semiskilled to skilled, light to medium work but
that he had the residual functional capacity to perform a limited
range of sedentary work. Tr. 15, 18 and 60-63.  The
administrative law judge specifically found that Troshak could
perform sedentary work except it must be

> limited to walking a total of 2 hours and not more
> than 600 feet at a time, occasional overhead reaching,
> operation of foot controls, bending, climbing,
> stooping, kneeling, crouching and crawling, and
> controlled work environments with no exposure to
> temperature extremes, fumes, dusts, or chemicals.[18]

Tr. 18.  In making this finding the administrative law judge did
not point to a medical opinion supporting his assessment.  A

---

18. When interrogating the vocational expert the administrative
law judge did not say "no exposure to temperature extremes,
fumes, dusts, or chemicals" but "no exposure to the concentrated
fumes, dusts or chemical, containing perfume or alcohol based
substances." Tr. 144.

state agency physician did not complete a "Physical Residual Functional Capacity Assessment," form SSA-4743, it was completed by a non-medical adjudicator. Tr. 276-281.  Furthermore, in setting the residual functional capacity at a limited range of sedentary work, the administrative law judge erroneously stated that "[t]here is no indication that a medical source has reported the claimant is incapable of performing even sedentary work." Tr. 20.

Based on the above residual functional capacity and the testimony of a vocational expert the administrative law judge found that Troshak could perform charge account clerk, call-out operator, and surveillance system monitor, and that there were a significant number of such jobs in the local and national economies. Tr. 21.

The administrative record in this case is 527 pages in length, primarily consisting of medical and vocational records. Troshak argues that the administrative law judge failed to acknowledge and address Dr. Bascom's opinion that Troshak was incapable of performing any full-time work activity and (2) failed to acknowledge and address Troshak's mental impairment. We have thoroughly reviewed the record in this case and find substantial merit in Troshak's arguments.

The Social Security regulations contemplate the administrative law judge considering whether there are any medically determinable impairments and then when setting a

15

claimant's residual functional capacity considering the symptoms of both medically determinable severe and non-severe impairments. 20 C.F.R. § 404.1529.  The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limit the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. § 404.1520(d)-(g).  A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two.  However, all of the medically determinable impairments both severe and non-severe must be considered at step four when setting the residual functional capacity.  The social security regulations mandate such consideration and this court has repeatedly so indicated. See, e.g., Christenson v. Astrue, Civil No. 10-1192, slip op. at 12 (M.D. Pa. May 18, 2011)(Muir, J.); Little v. Astrue, Civil No. 10-1626, slip op. at 19-21 (M.D.Pa. September 14, 2011)(Kosik, J.); Crayton v. Astrue, Civil No. 10-1265, slip op. at 32-35 (M.D.Pa. September 27, 2011)(Caputo, J.); 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2).

     The record suggests that Troshak suffered from sleep

apnea and depression.  Dr. Bascom found that Troshak suffered from sleep apnea and depression. Tr. 253-254 and 392-393.  Dr. Weeks, the state agency psychologist, concluded Troshak suffered from depression. Tr. 289.  The failure of the administrative law judge to find those conditions as medically determinable impairments, or to give an adequate explanation for discounting them, makes his decisions at steps two and four of the sequential evaluation process defective.

The error at step two of the sequential evaluation process draws into question the administrative law judge's residual functional capacity determination and assessment of the credibility of Troshak.  The administrative law judge found that Troshak's medically determinable impairments could reasonably cause Troshak's alleged symptoms but that Troshak's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible.  This determination by the administrative law judge was based on an incomplete and faulty analysis of all of Troshak's medically determinable impairments.

The administrative law judge failed to acknowledge the opinion of Dr. Bascom, a treating physician regarding the physical functional abilities of Troshak  The preference for the treating physician's opinion has been recognized by the Court of Appeals for the Third Circuit and by all of the federal circuits. See, e.g., Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000).

17

In the present case, there was no medical opinion that conflicted with the opinion of Dr. Bascom.  The administrative law judge did not acknowledge or give a reason for rejecting the opinion of Dr. Bascom.  There is no evidence supporting the residual functional capacity assessment of the administrative law judge.  It is entirely based on the administrative law judge lay analysis of the bare medical records.

An administrative law judge may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." Id.  As one court has stated, "Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong."  Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir 1990).

We recognize that the residual functional capacity assessment must be based on a consideration of all the evidence in the record, including the testimony of the claimant regarding his activities of daily living,  medical records, lay evidence and evidence of pain. See Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 121-122 (3d Cir 2000).  However, rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the

18

functional abilities of the claimant. See Doak v. Heckler, 790
F.2d 26, 29 (3d Cir.1986)("No physician suggested that the
activity Doak could perform was consistent with the definition of
light work set forth in the regulations, and therefore the ALJ's
conclusion that he could is not supported by substantial
evidence."); 20 C.F.R. § 404.1545(a). As two commentators have
explained:

> Sometimes administrative law judges assert that they -
> and not physicians - have the right to make residual
> functional capacity determinations. In fact, it can
> reasonably be asserted that the ALJ has the right
> to determine whether a claimant can engage in
> sedentary, light, medium, or heavy work.  The ALJ
> should not assume that physicians know the Social
> Security Administration's definitions of those
> terms. However, the underlying determination is a
> medical determination, i.e., that the claimant can
> lift five, 20, 50, or 100 pounds, and can stand for
> 30 minutes, two hours, six hours, or eight hours.
> That determination must be made by a doctor.  Once
> the doctor has determined how long the claimant can
> sit, stand or walk, and how much weight the claimant
> can lift and carry, then the ALJ, with the aid of a
> vocational expert if necessary, can translate that
> medical determination into a residual functional
> capacity determination.  Of course, in such a situation
> a residual functional capacity determination is merely
> a mechanical determination, because the regulations
> clearly and explicitly define the various types of
> work that can be performed by claimants, based upon
> their physical capacities.

Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability
Law and Procedure in Federal Courts, 287-88 (2011)(emphasis
added); see also Woodford v. Apfel, 93 F.Supp.2d 521, 529
(S.D.N.Y. 2000)("An ALJ commits legal error when he makes a
residual functional capacity determination based on medical

reports that do not specifically explain the scope of claimant's work-related capabilities."); Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y. 1996)("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required."). The administrative law judge cannot speculate as to a claimant's residual functional capacity but must have medical evidence, and generally a medical opinion regarding the functional capabilities of the claimant, supporting his determination. Id.

In this case there was no assessment of the functional capabilities of Troshak from a physician which supported the administrative law judge's residual functional capacity assessment and the bare medical records and other non-medical evidence were insufficient for the administrative law judge to conclude that Troshak had the residual functional capacity to engage in a limited range of sedentary work on a full-time basis, 5 days per week, 8 hours a day or similar schedule.

The administrative law judge relied exclusively on his lay analysis of the medical records. In light of the medical evidence that we reviewed in this memorandum, the administrative law judge's residual functional capacity assessment is not supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) vacate the decision of the Commissioner and

20

remand the case to the Commissioner for further proceedings.

An appropriate order will be entered.


s/ James M. Munley
JAMES M. MUNLEY
United States District Judge


Dated: September   26, 2012